***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Decision and Order, except for minor modifications.
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. On October 31, 1996, the plaintiff was a close custody inmate of Eastern Correctional Institution of the North Carolina Department of Corrections. The plaintiff remains an inmate within the North Carolina prison system. On October 31, 1996, the plaintiff was engaged in a physical altercation with inmate Woodrow McNeil, another close custody inmate. The confrontation stemmed from plaintiff allegation's that inmate McNeil had stolen plaintiff's narcotic drugs. Following these accusations by plaintiff, a fistfight between the inmates ensued.
2. This fight took place in the co-op unit of Eastern Correctional. Despite the fact that the altercation began as a result of plaintiff's accusations that McNeil stole plaintiff's drugs, plaintiff contends that McNeil attacked the plaintiff with a broom handle. Yet, after a complete investigation of the fight, no such broom handle was found, no witnesses testified that a broom handle was used, and in fact, neither plaintiff nor McNeil alleged the use of a broom handle during their interrogations following the fight. In addition, other than the participants, the only witness to the fight sequence to testify at the hearing was Officer Cheryl Cooper, who stated that she saw plaintiff as the aggressor, when she observed him chasing McNeil. After Eastern personnel halted the fight between the parties, inmate McNeil was taken to the infirmary in order to address injuries he sustained during the fight. As plaintiff was uninjured in the altercation, he was immediately taken to administrative segregation.
3. Thereafter, Eastern personnel conducted an investigation of the fight, leading to the charge of "C-3 fighting" against both inmates. A Class C represents the most minor level of fighting infraction, which involves no weapons or serious injury. Both inmates pled guilty to the offense, and each remained in administrative segregation for a period of disciplinary time. Administrative segregation is the process by which inmates are kept isolated for 23 hours a day, and is viewed as a punishment by both inmates and prison officials. While in segregation, Lt. Bobby Summers conducted repeated interviews of both plaintiff and McNeil. During the interviews, both inmates admitted that the fight had begun over plaintiff's accusations that McNeil stole plaintiff's drugs; that the conflict was resolved, and that no further difficulties or conflicts would ensure. At no point during these conversations did the plaintiff allege that McNeil had used a broom handle or any other weapon during the fistfight. In addition, plaintiff never indicated to Lt. Summers that he was in fear of McNeil, that he worried about additional altercations with McNeil, or that he felt uncomfortable being housed in the same area as McNeil. This was true despite plaintiff's understanding that all inmates are normally released to Gentry Unit following their release from segregation. In fact, the plaintiff indicated to Lt. Summers that everything between them had been resolved, and that they would be fine together in the general prison population.
4. While conducting his investigation, Lt. Summers spoke to a number of witnesses, including Mr. Franklin Arnold, who was an inmate of Eastern and plaintiff's close friend. Mr. Arnold was also assigned to administrative segregation during the time when plaintiff and McNeil had served their punishment terms. Mr. Arnold testified that he had attempted to negotiate peace between plaintiff and McNeil, that the conflict between them was "squashed", and that he had informed Lt. Summers of this fact. Mr. Arnold further told Lt. Summers that both plaintiff and McNeil would be okay in general population together. As Mr. Arnold was a very good friend of plaintiff, Lt. Summers had no reason to disbelieve him, or the inmates who agreed that the dispute was resolved. In addition, there was no history of threats or violence between plaintiff and McNeil, and following October 31, 1996, the only allegations of any threats were those made by plaintiff against McNeil.
5. Following the completion of Lt. Summers' investigation, including statements by plaintiff, McNeil and Franklin Arnold that the conflict was resolved, and the completion of the disciplinary time, both plaintiff and McNeil were released back into the general population. This release took place approximately 12 days following the fistfight of October 31. At the time the procedure at Eastern Correctional was to release segregation inmates to Gentry Unit, which was considered the "receiving unit". From Gentry Unit, inmates would be assigned to different units within the institution, depending upon when and where cells became available. At that time Gentry Unit was overpopulated, and therefore, some recently received inmates were forced to sleep in bunk beds that were located in the unit day room. Among these inmates were plaintiff and Mr. Arnold, who awaited the opening of individual cells in one of the units. Because Mr. Arnold had been living in this day room for a longer period of time, he was offered an individual cell before the plaintiff. This cell was located in Gentry Unit in the same block that McNeil had recently been assigned. Mr. Arnold deferred taking this cell, and offered it to plaintiff instead. Despite the fact that the cell was located in close proximity to McNeil's cell, plaintiff accepted this cell. Stated alternatively, despite the allegations in plaintiff's complaint that there were "ongoing threats" between them, plaintiff agreed to take a cell in the same unit and block as McNeil.
6. Thereafter, while assisting Franklin Arnold's move into a cell in Delta Unit, the plaintiff approached Officer Larry Hobbs, who was assigned to Delta Unit. Plaintiff asked Officer Hobbs about the possibility of moving from Gentry Unit to Delta Unit, so that he could be closer to his friends in the institution. Officer Hobbs responded that he did not have the authority to authorize such a move, but that he would leave a note for the appropriate Eastern official to consider plaintiff's request. At no time did plaintiff indicate to Officer Hobbs that he had a fear of McNeil, that he was uncomfortable being housed in the same unit as McNeil, or that his request to move was anything other than an attempt to be closer to his friends. Had plaintiff indicate any kind of fear or discomfort about being housed in the same unit as McNeil, Officer Hobbs would have been required to immediately remove plaintiff from the general population and begin the process of protective custody. Protective custody is a procedure by which those inmates who have a fear for their own well-being, or may be threats to others, are removed from the general population and housed separately. Nevertheless, as plaintiff had not expressed any such concern, Officer Hobbs did not offer this protective custody. Other than Officer Hobbs, there was no substantiated evidence that the plaintiff spoke to any other Eastern official regarding the prospect of moving from Gentry Unit, including those named in plaintiff's complaint.
7. Until November 24, 1996, plaintiff and McNeil coexisted in Gentry Unit, despite the alleged threats made by plaintiff against McNeil. On that date, inmate McNeil attacked plaintiff with a homemade knife, or "shank", causing injuries to plaintiff's back, head and right eye. Appropriate measures were used in breaking up the fight.
 ***********
Based on the foregoing Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to prove negligence, the plaintiff must establish a duty imposed on defendant by law to conform to a certain standard of conduct with respect of the interests of others; a breach of that duty; an injury or damages to the plaintiff; and a sufficient factual and legal connection between the defendant's alleged breach of duty and the plaintiff's harm. Sasser v. Beck, 65 N.C. App. 170, 308 S.E.2d 722
(1983), review denied, 310 N.C. 309, 312 S.E.2d 652 (1984). The evidence presented clearly demonstrates that the named employees of defendant were not negligent.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. The evidence offered at the trial clearly establishes that no acts of negligence were committed by the named employees of defendant. Thus, plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs.
This the 13th day of May 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER